David C. Wakefield, Esq. Bar #: 185736
Law Offices of David C. Wakefield
10620 Treena Street, Suite 230
San Diego, CA 92131
Telephone: 619.241.7112; Facsimile: 619.342.7755
E-mail: dcw@DMWakeLaw.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED AFRICAN-ASIAN ABILITIES CLUB; RALPHA HAROLD MACK, JUNIOR**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ALPHA PROPERTY INVESTMENTS LLC; CONNIE GUTIERREZ, Manager, Northwoods Apartments; AND DOES 1 THROUGH 10, Inclusive**<br><br>**Defendants.** | **Case No.:**<br><br>**COMPLAINT**<br><br>**DISCRIMINATORY PRACTICES**<br>**[Fair Housing Act Amendments of 1988, 42 U.S.C. 3604, 42 U.S.C. §12182(a) Et. Seq; Government Code 12925; Civil Code 51, 52, 54.3**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This case involves system-wide housing discrimination in violation of the Fair Housing Act Amendments of 1988 (FHAA), the California Disabled Persons Act (CDPA), Unruh Civil Rights Act (UCRA), California Fair Employment and Housing Act (CFEHA) and Title III of the Americans with Disabilities Act (ADA). Therefore, Plaintiffs make the following allegations in this civil rights action.

## JURISDICTION AND VENUE

2. Defendants' property that is the subject of this action is an apartment located in Riverside County.

3. The federal jurisdiction of this action is based on the 42 U.S.C. 3601, Et. Seq. - the Fair Housing Act Amendments of 1988, and 42 U.S.C. 12101 Et. seq. Venue in the Judicial District of the United States District Court of the Central District of California is in accordance with 28 U.S.C. § 1391(b) because a substantial part of Plaintiffs' claims arose within the Judicial District of the United States District Court of the Central District of California.

## SUPPLEMENTAL JURISDICTION

4. The Judicial District of the United States District Court of the Central District of California has supplemental jurisdiction over the state claims as alleged in this Complaint pursuant to 28 U.S.C. § 1367(a). The reason supplemental jurisdiction is proper in this action is because all the causes of action or claims derived from federal law and those arising under state law, as herein alleged, arose from common nucleus of operative facts. The common nucleus of operative facts, include, but are not limited to, the incidents where Plaintiffs and at least one association member were denied full and equal access to Defendants' goods, and/or services in violation of both federal and state laws when he attempted to enter, use, and/or exit Defendants' services as described within this Complaint below. Further, due to this denial of full and equal access, Plaintiffs and other individuals with disabilities were injured. Based upon said allegations, the California causes of actions, as stated herein, are so related to the Federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

## NAMED DEFENDANTS AND NAMED PLAINTIFFS

5. The term Plaintiffs as used herein specifically include United African-Asian Abilities Club and RALPHA HAROLD MACK, JUNIOR. The Club is a non-profit corporation.

6. Defendants are, and, at all times mentioned herein, were, a business or corporation or franchise organized and existing and/or doing business under the laws of the State of California.

7. Plaintiff Association is informed and believes and thereon alleges that ALPHA PROPERTY INVESTMENTS LLC; CONNIE GUTIERREZ, Manager, Northwoods Apartments are the operators of the business known as Northwoods Apartments located at 23925 Eucalyptus Ave, Moreno Valley, CA 92553. Plaintiff Association is informed and believes and thereon alleges that Defendant ALPHA PROPERTY INVESTMENTS LLC is the owner, operator, and/or lessor of the real property located at 23925 Eucalyptus Ave, Moreno Valley, CA 92553.

8. Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, and/or agents of ALPHA PROPERTY INVESTMENTS LLC; CONNIE GUTIERREZ, Manager, Northwoods Apartments. Plaintiff Association is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff Association will pray leave of the court to amend this complaint to allege the true names and capacities of the Does when ascertained.

9. Plaintiffs, including Plaintiff Association, are informed, believe and thereon allege, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiffs, including Plaintiff Association are further informed and believe, and

thereon allege, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

## CONCISE SET OF FACTS

10. RALPHA HAROLD MACK, JUNIOR has cerebral palsy and uses a wheelchair. RALPHA HAROLD MACK, JUNIOR resides in Los Angeles County and the Club has been searching for an accessible apartment for him for a year. Club Members 008 and 010 help RALPHA HAROLD MACK, JUNIOR in finding accessible apartments. Plaintiff Mack went to the property in March 2017. Also, Club Member 011 went to the property in March 2017. Club Member 011 has a disability.

11. Plaintiffs allege that Defendants have been and are engaging in a system-wide failure to provide reasonable modifications and accommodations, and a failure to remove architectural barriers. Plaintiffs allege Defendants' failures are because Defendants failed to follow policies to comply with the FHA, ADA, CPDA and UCRA or Defendants failed to adopt policies to comply with said laws.

12. Defendants operate an apartment property. The property is located at 23925-23967 Eucalyptus Ave, Moreno Valley, CA 92553. The property was built in 1986 and has 1 story with 98 units. The rent is approximately: 1 Bedroom, $1,175, 2 Bedrooms, $1,395. The internet provides a wealth of information regarding the property. The internet advertises that the property has amenities that include: Pet Policy, Dogs Allowed: Breed restrictions may apply, $500 Deposit, 25 lb Weight Limit, 2 Pet Limit, Cats Allowed, $500 Deposit, 2 Pet Limit, Parking, Covered, 1 space; Assigned Parking, Garage: $75, 1 space; Assigned Parking, Services, Laundry Facilities, Property Manager on Site, Courtesy Patrol, 24 Hour Availability,

Online Services, Parking Security, Outdoor Space, Gated, Grill, Fitness & Recreation, Spa, Pool, Features, High Speed Internet Access, Air Conditioning, Heating, Smoke Free, Cable Ready, Storage Units, Fireplace, Kitchen, Dishwasher, Disposal, Range, Refrigerator, Living Space, Carpet, Vaulted Ceiling, Walk-In Closets, Window Coverings, Outdoor Space, Balcony, Patio, Yard. The property advertises on forrent.com, rent.com, apartments.com, yelp.com, homes.com, yellowpages.com, usplaces.com, apartmentfinder.com. It is very important to know that on forrent.com, rent.com, apartments.com, homes.com, apartmentfinder.com, there is the equal housing opportunity logo. The plaintiff alleges that there is disparate treatment on the internet related to the amenities being offered to people without disabilities and people with disabilities. For example, the tow signage was not installed. The accessible parking space had an access aisle, which was not van accessible. The aisle did not have the "no parking" included in the access aisle. The office had a high threshold. There was no International Symbol of Accessibility signage. The Internet does not state the accessible amenities at all. Also, the statement the "equal housing opportunity statement" is misleading. In fact, the property is not completely accessible. All the above facts and the facts stated herein have a disparate impact on the disability community.

13. Defendants' Internet picture advertising has a disparate impact on Plaintiff MACK. There are apartments on the Internet that advertise disability and accessible features. For example, on http://www.rent.com/california/valley-village-apartments/the-avery-4-64371353, the apartment called Avery Apartments shows a photograph of the pool with the assistive lift device. The following is the picture from the Avery Apartments:



14. Reasoning that neither the broadly drafted statute nor its legislative history "suggests that Congress intended to exempt from its proscriptions subtle methods of indicating racial preference," the Second Circuit has held that "in some circumstances" an ad using human models of one race to the exclusion of others may indicate a racial preference violative of § 3604(c), regardless of the absence of any facially discriminatory verbal message. *Id.; see also HOME,* 943 F.2d at 647–48 & n. 4 ("discrimination [under the FHA] may occur through words or pictures, and the use of all-white models could be factor in determining whether an advertisement conveys a discriminatory message...."); *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 34–35 (D.C.Cir.), *cert. denied,* 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 521 (1990); *Fenwick–Schafer,* 774 F.Supp. at 364–66; *Saunders,* 659 F.Supp. at 1058. This reasoning applies here.

15. Defendants' Internet photographs suggest a preference for people without disabilities. The Internet picture of the living area does not provide any depiction of any access for people with disabilities. The Internet picture of the dining area does not provide any depiction of any access for people with disabilities. The Internet picture of the bedroom does not provide any depiction of any access for people with disabilities. The Internet picture of the laundry room does not provide any depiction of any access for people with disabilities. The Internet picture of the apartments view does not provide any depiction of any access for people with disabilities. The Internet picture of the parking view does not provide any depiction of any access for people with disabilities. The Internet picture of the closet area does not provide any

depiction of any access for people with disabilities. The Internet picture of the path of travel view does not provide any depiction of any access for people with disabilities. The Internet picture of the landmark does not provide any depiction of any access for people with disabilities. The Internet picture of the veranda area does not provide any depiction of any access for people with disabilities. The Internet picture of the swimming pool does not show the assistive lifting device for people with disability. The Internet picture of the Jacuzzi does not show the assistive lifting device for people with disability. The Internet picture of the kitchen does not show how the kitchen can be modified for a person with a disability. The Internet picture of the bathroom does not show how the bathroom can be modified for a person with a disability.

16. Club Members 008 and 010 assisted Plaintiff MACK in determining if the subject apartments were accessible for him. Defendant operates an inaccessible apartment property. The doors had the doorknobs that require tight twisting. Also, the drop box was too high. Moreover, the path of travel had 2 steps. Further, the door of one of the units had the doorknob that required tight twisting. Also, there was 1 step. In addition, the parking had the access aisle that was not 8x9. Moreover, the bathroom sink had the mirror that was too high. Also, the soap dispenser was too high. Also, in the bathroom toilet, the toilet paper dispenser was too high. Additionally, the Jacuzzi had no lifting device. Finally, there were no accessible signs all over the apartment complex.

17. When Plaintiff Association tested Defendants' facilities it discovered that Plaintiff MACK and other members would be denied equal access to and would have difficulty using the rental housing' facilities since Defendants' facilities failed to comply with the Housing Accessibility Guidelines – Title 24 of the California Building Code. Also, the Defendant failed to comply with the readily achievable

ADA accessibility guidelines related to the area that was open to the public. Defendants failed to remove policy, service, program or physical barriers to equal access within their housing facilities. The examples listed below of known barriers to equal access are not an exhaustive list of the barriers to equal access that relate to his disabilities that exist at Defendants' facilities.

18. Plaintiff Club diverted its time and resources because of service, policy, program and physical barriers at Defendants' property. Club personnel conducted detailed Internet search determine if Defendants have large print, Braille, deaf interpreter, therapy animal and access structural changes to unit at cost of tenant policies. Further, the Club retained contractors to investigate said policies, to survey the property, to photograph the property, to investigate when the property was constructed, to investigate the property ownership and to have an access report prepared. All the above diverted the Club's time and resources. Club staff investigated Defendants' Internet presence. See Exhibit A. Also, the Club investigated Defendants' written material such as brochures, rental applications and leases. See Exhibit A. Moreover, the Club made an oral investigation to ascertain Defendants' companion animal, deaf interpreter and unit retrofitting policies. See Exhibit A. The findings were: Defendant's facility does not have anything posted regarding service animals. Defendant's facility does not have any hearing-impaired smoke/fire alarms located at the facility. Defendant's facility does not have a TTY machine available on-site. Further, there is no Braille application available at the facility. The Club retained a physical access consultant to survey Defendants' facility. The findings are attached as Exhibit B. The findings show that the following areas of access violations: parking, entrance, path of travel, accessible route, doors, drop box, restroom and the signs and Jacuzzi. The said violations are specified within Exhibit B. The said exhibit details all the physical access violations

and said violations are hereby alleged herein by reference. The facility was constructed in 1986.

19. Plaintiffs and Plaintiff Association can prove these barriers exist since Plaintiffs confirmed the access barriers at Defendants' facility. Plaintiffs specifically allege that Defendants knew, to a substantial certainty, that the policy, service, program and architectural barriers precluded wheelchair access. First, Plaintiffs and Plaintiff Association will prove that Defendants had actual knowledge that the architectural barriers precluded access.

20. Second, due to the abundance of disability rights information and constant news coverage of disability discrimination lawsuits, Defendants had actual knowledge of the state disability laws and access requirements and decided deliberately not to remove policy, service, program and architectural barriers. Plaintiffs and Plaintiff Association allege any alternative methods preclude integration of wheelchair patrons, as it requires them to use second-class facilities. Also, expert testimony will show the facility contained inaccessible features.

21. Plaintiffs and specifically at least one association member intend to return to Defendants' housing facilities in the immediate future to use their goods and services. Plaintiff MACK frequently goes in the vicinity of Defendant's facility. Plaintiffs and specifically at least one association member intends to return to Defendants' housing facilities in the immediate future and at the conclusion of this case to utilize their goods and services.

22. Pursuant to state law and federal housing access requirements, Defendants are required to remove barriers to their existing facilities. Further, Defendants had actual knowledge of their access barrier removal duties under the state disability laws. Also, Defendants should have known that individuals with disabilities are not required to give notice to a governmental agency before filing suit alleging

Defendants failed to remove service, policy, program and architectural barriers to access.

23. Plaintiffs and Plaintiff Association believes and herein alleges Defendants' facilities have access violations not directly experienced by Plaintiff Association but are related to his disability that would preclude or limit equal access by Plaintiff MACK potentially including but not limited to violations of the housing and Title 24 of the California Building Code.

24. Based on these facts, Plaintiffs and Plaintiff Association alleges he was discriminated against each time he patronized Defendants' facilities.

**STANDING**

25. Plaintiff MACK has sued under Title III of the ADA, seeking declaratory and injunctive relief. Title III authorizes a person to seek injunctive relief if the person "is being subjected to discrimination on the basis of disability" or "has reasonable grounds for believing that such person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). Although the Fourth Circuit has held that the private right of action under Title II of the ADA is available to any person with Article III standing, see Helping Hand, 515 F.3d at 363, the language of Title III's remedial provision is narrower than the corresponding provisions in Titles I and II of the ADA. Compare 42 U.S.C. § 12117 (Title I) (providing a remedy to "any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment") with 42 U.S.C. § 12133 (Title II) (providing a remedy to "any person alleging discrimination on the basis of disability in violation of section 12132"). When a plaintiff claims a right to sue under a legislatively-created cause of action, courts must not only ask "whether any plaintiff has a cause of action under the statute," but also "whether this plaintiff has a cause of action under the statute,"

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 n. 2, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (emphases in original), a requirement often known as "statutory standing." See Friends of the Earth, Inc. v. Laidlaw Env'tl Serv. (TOC), Inc., 528 U.S. 167, 175, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("[W]e have held that citizens lack statutory standing under § 505(a) [of the Clean Water Act] to sue for violations that have ceased by the time *729 the complaint is filed."). Plaintiff MACK is being subjected to discrimination on the basis of disability" or "has reasonable grounds for believing that such person is about to be subjected to discrimination." Therefore, Plaintiff MACK has statutory standing under Title III of the ADA.

26. Plaintiff Club has standing on its own or for its members as stated herein. Organizational standing is separate from the standing of the organization's members, turning instead on "whether the organization itself has suffered an injury in fact." *Smith v. Pacific Properties and Development Corp.,* 358 F.3d 1097, 1101 (9th Cir.2004) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). Section 3602(d) of the FHA defines a "person" who may sue under the Act to include "corporations" and "associations." 42 U.S.C. § 3602(d) (1988). As a corporation, plaintiffs are "persons" protected by the statute. *See Havens,* 455 U.S. at 378–79 & n. 19, 102 S.Ct. 1114; *Walker v. City of Lakewood,* 272 F.3d 1114, 1123, n. 1 (9th Cir.2001). Plaintiffs must therefore satisfy the requirement for individual standing: "a demonstration of concrete and particularized injury giving." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *see also Havens,* 455 U.S. at 378–79, 102 S.Ct. 1114. In *Pacific Properties,* the Ninth Circuit reaffirmed its holding in *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir.2002) that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its

organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. *Pacific Properties,* 358 F.3d at 1101 (citing *Fair Housing,* 285 F.3d at 905). Testers have played a long and important role in fair housing enforcement, stemming from the Supreme Court's three-decade-old determination that with the Fair Housing Act, Congress intended to establish a broad set of rights to be free from housing discrimination, and that as a general rule, courts should not erect standing barriers—other than the minima required by Article III—to those seeking to vindicate these rights. *See Havens,* 455 U.S. at 372–73, 102 S.Ct. 1114; *see also Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 103, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The high court more recently cautioned that courts be no less generous in interpreting provisions added to the Fair Housing Act by the Fair Housing Act. *See City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). Here, Plaintiff-UNITED AFRICAN-ASIAN ABILITIES CLUB (hereinafter referred to as UAAAC, Club or Association) is an organization that advocates on the behalf of its members with disabilities when their civil rights and liberties have been violated. Members of that organization include members that have disabilities that relate to the service, policy, programs and physical accessibility barriers at the property; those disabilities include, but are not limited to, sight, mobility disabilities and hearing disabilities. Plaintiff-UNITED AFRICAN-ASIAN ABILITIES CLUB has members who have been deterred from accessing Defendant's facilities and services. The Club or Association is an international group started in 2011. One of its core missions is to reduce charitable or public assistance dependence by people with mental and physical conditions by promoting business and employment opportunities. Another critical mission of the Club is to provide written testimony concerning proposed laws related to people with conditions. Further, another core mission of Plaintiff Association is to provide

counseling and referral housing services to minorities with sight, mental, hearing and physical conditions. Achieving this mission is frustrated by the rampant violations of the fair housing laws. In fact, the Association started its mission in 2011. It is futile for the most part. Another core mission of Association is searching for accessible businesses and giving awards to them. These businesses include apartments. As alleged with specificity herein, Plaintiffs had to divert time and resources to investigate Defendants. As in Smith, 358 F.3d 1105, a further mission of the group is to eliminate disability discrimination. These missions are not abstract social interests of the Club. Without access to housing people with disabilities cannot live alone. Plaintiff United African-Asian Abilities Club members have associational standing to maintain this action. The U.S. Supreme Court has set out three requirements for an associational plaintiff to have standing under U.S. Const. art. III to sue on behalf of its members: (1) its members must have standing to sue on their own. The United African-Asian Abilities Club's members have mobility, hearing, sight and other disabilities covered by the Fair Housing Act; (2) the interests he/she seeks to protect must be germane to the organization's missions. The missions of United African – Asian Abilities Club are stated above; and (3) neither the claim asserted nor the relief requested may require the participation of individual members in the lawsuit, the United African – Asian Abilities Club is only seeking organizational damages and injunctive relief and not seeking to recover damages for the individual members. Such associational standing requires that at least some members would have standing to sue in their own right. The first two factors are required by the Constitution and the third is a judicially self-imposed limit on the exercise of federal jurisdiction that Congress may remove by statute. In determining whether UAAAC has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual: Has the plaintiff " 'alleged such a

personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"? *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S., at 261, 97 S.Ct., at 561 (emphasis omitted), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). There can be no question that the Club has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests, see *Sierra Club v. Morton*, 405 U.S., at 739, 92 S.Ct., at 1368.

27. In 2011, the United African Asian Abilities Club was founded as a non incorporated association by two Black men that use a wheelchair and one mother of a young Black man that uses a wheelchair. Google shows that the UAAAC created a blog on February 17, 2012. The blog address is uaaaclub.blogspot.com. Started on February 17, 2012, the blog documented the discrimination based by Blacks and Asians with disabilities, the fact that Blacks and Asians with disabilities make up the largest minority within the world, provides information about how minorities with disabilities can work, provides information about Filipinos with Autism live within Carmona, Cavite, provides information on the Asian with disabilities outreach think tank. There are too many articles to list here that are on the blog. However, most were posted before September 25, 2016. The Club has a detailed method for determining what company will receive the YES award. The method includes having a UAAAC member test access compliance by visiting the property and conducting a survey. Also, the member requests information from the company. Thereafter, all of the information is evaluated by the awards committee. The on site tester receives a payment for the services. All of the awardees are posted on the UAAAC blog. During the last two years the club provided accessibility awards to the following:

1) 9021 PHO, 1164 Glendale Galleria Way, Glendale, CA 91210

2) Best Western Burbank Airport Inn, 7615 Lankershim Blvd, North Hollywood, CA 91605
3) Alegro Restaurant, 423 N Brand Blvd, Glendale, CA 91203
4) America's Tire, 4817 E Ramon Rd, Palm Springs, CA 92264
5) Americas Best Value Inn, 625 E 5th St, Beaumont, CA 92223
6) Army Navy Surplus Value Center, 3828 W Sunset Blvd, Los Angeles, CA 90026
7) Avalon at Riverwalk, 4525 Sierra Vista Avenue, Riverside 92505
8) Bar Verde, 889 Americana Way, Glendale 91210
9) Best Shawarma, 602 W Glenoaks Bl, Glendale 91202
10) Best Western Golden Triangle Inn, 2575 Clairemont Drive San Diego 92117
11) Best Western Plus Island Palms, 2051 Shelter Island Drive San Diego 92106
12) Boulder Creek Apartment Homes, 2442 Iowa Avenue Riverside CA 92507
13) Brand 158, 158 S Brand Blvd, Glendale, CA 91204
14) Brand Grill 1200, S. Brand Bl, Glendale 91205
15) Burger Boss, 2585 Canyon Springs Pkwy, Riverside 92507
16) Cafe Bravo, 1135 W Glenoaks Blvd, Glendale, CA 91202
17) Caliente Tropics, 411 E Palm Canyon Dr, Palm Springs, CA 92264
18) Canyon Park Apartment, 3100 Van Buren Boulevard, Riverside, CA 92503
19) Caravan Restaurant, 1108 W Glenoaks Blvd, Glendale, CA 91202
20) Casa De Ramos, 827 W Glenoaks Blvd, Glendale, CA 91202
a. 21. CasaLago Eastlake Apartments 2816 Cielo Circulo, Chula Vista, CA 91915
21) Centro, 45 E 12th St, National City, CA 91950
22) Colony Inn North Hollywood, 4917 Vineland Ave, North Hollywood, CA 91601
23) Comfort Inn, 2201 Hotel Circle S, San Diego 92108
24) Comfort Inn & Suites LAX Airport Inglewood, 4922 W Century Blvd, Inglewood, CA 90304
25) Concord Square Apartments, 2700 Iowa Ave, Riverside 92505
26) Copper Canyon Apartment Homes, 1234 W Blaine St, Riverside, CA 92507
27) Corona Motel, 845 E Manchester Ave, Los Angeles, CA 90001
28) Corona Pointe Resort, 3957 Pierce St, Riverside, CA 92505
29) Crystal Fantasy, 268 N Palm Canyon Dr, Palm Springs, CA 92262

30) D'Elia's Grinders, 2093 University Ave, Riverside, CA 92507
31) Damon's Steak House, 317 N Brand Blvd, Glendale, CA 91203
32) Din Tai Fung, 177 Caruso Ave, Glendale, CA 91210
33) Duane's Prime Steak & Seafood, 3649 Mission Inn Avenue, Riverside, CA 92501
34) Eden Burger Bar, 333 N Verdugo Rd, Glendale, CA 91206
35) Eggs 'N' Things, 27560 Newhall Ranch Rd #301, Valencia, CA 91355
36) El Morfi Grill, 241 N Brand Blvd, Glendale, CA 91203
37) Holiday Inn Express & Suites Los Angeles Downtown West, 611 South Westlake Avenue, Los Angeles, CA 90057
38) Mikado Hotel, 12600 Riverside Dr, North Hollywood, CA 91607
39) SUPER 8 LOS ANGELES DOWNTOWN, 1341 W Sunset Blvd, Hwy 101 Exit Alvarado St, Los Angeles, CA 90026
40) LA Rentals, 3251 W 6th St Ste 109 Los Angeles, CA 90020
41) The Vermont, 3150 Wilshire Boulevard Los Angeles, CA 90010
42) BJ's Restaurant & Brewhouse, 460 The City Dr S, Orange, CA 92868
43) BJ's Restaurant & Brewhouse, 13130 Jamboree Rd, Irvine, CA 92602
44) BJ's Restaurant & Brewhouse, 121 Stonewood St, Downey, CA 90241
45) Buffalo Wild Wings, 8301 On the Mall, Buena Park, CA 90620
46) Jersey Mike's Subs, 5974 Orangethorpe Ave, Buena Park, CA 90620
47) Little Sparrow, 300 N Main St, Santa Ana, CA 92701
48) Taqueria El Triunfo, 1840 S Standard Ave # 107, Santa Ana, CA 92707
49) Yellow Basket Restaurant, 2860 S Main St, Santa Ana, CA 92707
50) Zov's Anaheim, 1801 E Katella Ave #1001, Anaheim, CA 92805
51) Cafe Rio Mexican Grill, 1140 Irvine Blvd, Tustin, CA 92780
52) Chick-fil-A, Gridley Rd, Cerritos, CA 90703
53) Coco's Bakery Restaurant, 1100 W Katella Ave, Anaheim, CA 92802
54) Crave Restaurant Downtown Santa Ana, 410 W 4th St, Santa Ana, CA 92701
55) Farrell's Ice Cream Parlour Restaurant, 8650 Beach Blvd, Buena Park, CA 90620
56) Mrs. Knott's Chicken Dinner Restaurant, 8039 Beach Blvd, Buena Park, CA 90620
57) Polly's Pies Restaurant, 2660 N Main St, Santa Ana, CA 92705
58) Specialty's Cafe & Bakery, 18400 Von Karman Ave, Irvine, CA 92612
59) Zov's Bistro Tustin, 7440 E 17th St, Tustin, CA 92780

28. Between 2011 to 2016 the Club assisted people with disabilities looking for

accessible apartments. The way the Club determines award is by conducting a site survey of companies and decides what award to give to the company. The company does not need to request to award or does not need to compensate the Club for the award. Between 2014 and 2015 the Club conducted lobbying effort related to disability rights. In 2015 the Club started to help Filipino with disabilities living in the Philippines to market goods and ladies bags. Also, the UAAAC conducts an educational program for children with or without disabilities living in the poor area of the Philippines and the UAAAC creates job training programs for the children that are 14 and above. The bag marketing and the children programs have suffered because the UAAAC had to divert time to this case. Before 2016, the Club helped people with disabilities living in Los Angeles related to finding accessible apartment without any success. The Club keeps the records of membership. The Club members include 001, a wheelchair user, 002, a wheelchair user, 003, a mother of a person with cerebral palsy, 004, a wheelchair user, 005, a person with cerebral palsy, 006, a person with cerebral palsy, 007, sister of a young man with cerebral palsy, 008, a woman with one leg, 009, a deaf person, 010, an advocate, RALPHA HAROLD MACK, JUNIOR, a person with cerebral palsy, 012, a daughter of a person with cerebral palsy, 013, a person with a sight disability, 014 an advocate.

29. The Club has the authority to conduct business within California. Before February 2015, more than two members were responsible for issuing the awards, for finding apartments, for lobbying and for marketing for the Club. The Club wrote a request by email to the defendant requesting the reasonable accommodation. No one ever responded to the request. When the Club was created back in 2011, the Club was not organized to file lawsuits. The Club advocates for minorities with disabilities. However, the Club discovered that most people do not listen to minorities with disabilities without a lawyer. In the year 2011 SB 1186 was moving

through the California Legislature. The 3 founders felt minorities were not represented in opposing SB 1186. The Founders created the UAAAC in large part to opposed the bill. On February 19, 2012 the Club started assisting the public in finding accessible apartments. On February 27, 2012 the Club wrote a report. The report found access to apartments is very hard for minorities with disabilities. On March 24, 2012 created the goal of marketing goods made by people with disabilities from the Philippines. On May 29, 2012 the Club created Awardee Tester Guidelines. On January 22, 2013 the guidelines were updated. The remainder of 2012 was spent evaluating companies for access issues and organizing the Club. In 2013 the Club did further evaluations. In 2014 the Club did further evaluations. On February 14, the Club started lobbying against SB 67, AB 54, AB 56 and SB 251. The Club emailed, faxed and mailed letters to all of the California politicians and disability groups. From February until September the Club conducted lobbying. The Club created the ladies bag catalog on September 1, 2015 to market the ladies bag.

**NOTICE**

30. Plaintiffs and Plaintiff Association are not required to provide notice to the defendants prior to filing a complaint. *Skaff v Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007), see also, *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir 2000).

**WHAT CLAIMS PLAINTIFFS ARE ALLEGING AGAINST EACH NAMED DEFENDANT**

31. ALPHA PROPERTY INVESTMENTS LLC; CONNIE GUTIERREZ, Manager, Northwoods Apartments and Does 1 through 10 will be referred to collectively hereinafter as "Defendants."

32. Plaintiffs aver that the Defendants are liable for the following claims as

alleged below:

**DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS**

FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS - **CLAIMS UNDER CALIFORNIA ACCESSIBILITY LAWS**

CLAIM I: **Denial Of Full And Equal Access**

33. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff ASSOCIATION was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants as required by Civil Code Sections 54, 54.1, and specifically 54.1(d). Defendants' facility violated state disability access laws, the ANSI Standards, A117, and California's Title 24 Accessible Building Code by failing to provide equal access to Defendants' facilities to persons with disabilities.

34. In this case, the apartment failed to comply with Title 24 requirements. The physical access violations are described in detail within Exhibit B. The findings show that the following areas of access violations: parking, entrance, path of travel, accessible route, doors, drop box, restroom and the signs and Jacuzzi. The said violations are specified within Exhibit B. Defendant's facility does not have anything posted regarding service animals. Defendant's facility does not have any hearing-impaired smoke/fire alarms located at the facility. Defendant's facility does not have a TTY machine available on-site. Further, there is no Braille application available at the facility. All said violations failed to comply with Title 24 standards. Therefore, the Plaintiff alleges that Defendant violated Civil Code Section 54.3 at the time they constructed the facility before the ADA was enacted.

35. Defendants denied Plaintiff ASSOCIATION full and equal access to Defendants' facility. Thus, Plaintiff ASSOCIATION was subjected to discrimination pursuant to Civil Code §§ 54, 54.1, and 54.3 because Plaintiff ASSOCIATION was

denied full, equal and safe access to Defendants' facility.

CLAIM II: **<u>Failure To Modify Practices, Policies And Procedures</u>**

36. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere herein this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1. Additionally, Defendants failed to have a plan to maintain any potential accessible features in a usable condition. Thus, Plaintiff ASSOCIATION was subjected to discrimination in violation of Civil Code § 54.1.

SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS- **<u>Claims Under The Americans With Disabilities Act Of 1990</u>**

CLAIM I: **<u>Denial of Participation</u>**

37. 42 United States Code 12182(b) states, "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." Plaintiff is informed, believes, and thereon alleges that Defendants violated the said provision because Plaintiff could not participate in their advertising accommodations because said advertising failed to delineate what features of the property are physically accessible and what services are accessible. Services include alternative methods of access other than removing physical barriers.

CLAIM II: **<u>Participation in Unequal Benefit</u>**

38. 42 United States Code 12182(b) states, "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such

individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is no disabilities that attract them to go to their place of accommodation. However, defendants do not offer users with disabilities any benefits that will help them decide to go to the place of accommodation. For example, providing physical access and service access is a very important benefit for people with disabilities. Even if the facilities are not completely physically accessible, the person with a disability may decide to go to the place if they provide great service access. There is no way for a person with a disability to determine if Defendant's place offers service access without the disabled person going to their business to find out that they cannot physically access the facility and that there is also no service access.

CLAIM III: **Separate Benefit**

39. 42 United States Code 12182(b) states "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others." Defendants provide a benefit that is separate and unequal to people with disability by forcing them to go to their place of accommodation to determine if they are physically accessible and to determine if they are service accessible. Users without disabilities do not need to consider if they can access the place of accommodation when they look at Defendant's advertising. All they need to consider is if they want to go to the place by looking at the

advertising, but users with disabilities must consider if the place is accessible by looking at the advertising or they need to go there to discover that the place is not accessible. Plaintiff could not determine from Defendant's advertising if Defendants' facility was accessible.

CLAIM IV: **Integrated Settings**

40. 42 United States Code 12182(b) states, "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." Plaintiff alleges by failing to offer the alternative methods to physical access, the defendants failed to offer the goods or the services in the most integrated selling. For example, defendants knew that the place of accommodation was not physically accessible but it failed to provide notice in their advertising, notices in the parking lot or otherwise on their premises, to allow people with disabilities to decide if they wanted to use the place by accepting the alternative methods.

CLAIM V: **Administrative Methods**

41. 42 United States Code 12182(b) states, "An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration—(i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control." Defendants decided to open a business and invite the public for profit. Thus, Defendants agreed to comply with all federal and states laws related to their business. Defendants retained agents and/or employees for business administration including Civil Rights compliance. Thus, Defendants had administrative control over service access compliance. Plaintiff alleges based on information and belief that Defendants' services including alternative methods, auxiliary aids, and business services violate said section because Defendants failed

to exercise control over their agents or employees as to ADA compliance.

CLAIM VI: **Screen Out**

42. 42 United States Code 12182(b) states, "...the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;..." The ADA was passed in 1990. It is alleged that one form of eliminating ADA discrimination is by removing architectural barriers if readily achievable. This claim relates to services even if some barriers cannot be removed or do not relate to physical barriers. Based on information and belief, Plaintiffs allege that Defendants failed to maintain policies to ensure their goods and services are fully accessible. Defendant's failure screens out people with disabilities.

CLAIM VII: **Auxiliary Aids**

43. 42 United States Code 12182(b) states, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;..." Plaintiff decided it would be a futile gesture to make an auxiliary aid request because Defendants completely failed to comply with the ADA based upon his going to Defendant's place to verify access to goods and services; notwithstanding that Defendants failed to remove architectural barriers. Plaintiff alleges that when Defendants do not remove architectural barriers, Defendants still

have the duty to offer auxiliary aids to provide access to the goods and services. Defendants failed to offer Plaintiff any auxiliary aids.

CLAIM VIII: **Communication Barriers**

44. 42 United States Code 12182(b) states, "a failure to remove…, and communication barriers that are structural in nature, in existing facilities, and where such removal is readily achievable." At Defendants' business there are communication barriers outside and inside the business. Plaintiff's sight is impaired. Therefore, Plaintiff needs structural communication to be able to access Defendants property.

CLAIM IX AGAINST ALL DEFENDANTS: **Denial Of Full And Equal Access**

45. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations. Plaintiff alleges Defendants are a public accommodation owned, leased and/or operated by Defendants. Defendants' existing facilities and/or services failed to provide full and equal access to Defendants' facility as required by 42 U.S.C. § 12182(a). Thus, Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was denied equal access to Defendants' existing facilities. In this case, the apartment failed to comply with Title 24 requirements. The physical access violations are described in detail within Exhibit B. The findings show that the following areas of access violations: parking, entrance, path of travel, accessible route, doors, drop box, restroom and the signs and Jacuzzi. The said violations are specified within Exhibit B. Defendant's facility does not have anything posted regarding service animals. Defendant's facility does not have any

hearing-impaired smoke/fire alarms located at the facility. Defendant's facility does not have a TTY machine available on-site. Further, there is no Braille application available at the facility. All said violations failed to comply with Title 24 standards.

46. At least one association member ("Member Tester") has physical impairments and due to these impairments he has learned to successfully operate a wheelchair for mobility. Said physical impairments substantially limit one or more of the following major life activities including but not limited to: walking. Member is unable to walk any distance. Member also has weakness in upper limb range of motion and has reduced dexterity of his hands. Member has physical impairments because the conditions affect one or more of the following body systems: neurological, musculoskeletal, special sense organs, and/or cardiovascular. Further, member's said physical impairments substantially limit one or more of the following major life activities: walking, and limited range of motion in arms and hands. In addition, member cannot perform one or more of the said major life activities in the manner, speed, and duration when compared to the average person. Moreover, at least one of the members of the UNITED AFRICAN-ASIAN ABILITIES CLUB has a history of or has been classified as having a physical impairment as required by 42 U.S.C. § 12102(2)(A).

CLAIM X AGAINST ALL DEFENDANTS: **Failure To Make Alterations In Such A Manner That The Altered Portions Of The Facility Are Readily Accessible And Usable By Individuals With Disabilities**

47. In this case, the apartment failed to comply with Title 24 requirements. The physical access violations are described in detail within Exhibit B. The findings show that the following areas of access violations: parking, entrance, path of travel, accessible route, doors, drop box, restroom and the signs and Jacuzzi. The said violations are specified within Exhibit B. Defendant's facility does not have anything posted regarding service animals. Defendant's facility does not have any

hearing-impaired smoke/fire alarms located at the facility. Defendant's facility does not have a TTY machine available on-site. Further, there is no Braille application available at the facility. All said violations failed to comply with Title 24 standards. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants. Defendants altered their facility in a manner that affects or could affect the usability of the facility or a part of the facility after January 26, 1992. In performing the alteration, Defendants failed to make the alteration in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in violation of 42 U.S.C. §12183(a)(2).

48. Additionally, Plaintiff is informed, believes and hereon alleges on information and belief, that the Defendants undertook an alteration that affects or could affect the usability of or access to an area of the facility containing a primary function after January 26, 1992. Defendants further failed to make the alterations in such a manner such that the facilities are readily accessible to the maximum extent feasible, and are usable by individuals with disabilities pursuant to 42 U.S.C. §12183(a)(2), including any of the following that may be applicable, i.e. the path of travel to the altered area, and the bathroom and common areas.

49. Pursuant to 42 U.S.C. §12183(a), this failure to make the alterations in a manner that, to the maximum extent feasible, are readily accessible to and usable by individuals with disabilities constitutes discrimination for purposes of 42 U.S.C. §12183(a). Therefore, Defendants discriminated against Plaintiff in violation of 42 U.S.C. § 12182(a).

50. Thus, Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was subjected to discrimination in violation of 42 U.S.C. § 12183(a), 42 U.S.C. §12182(a) and 42 U.S.C. §12188 because Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was denied equal access to Defendants' existing facilities.

CLAIM XI AGAINST ALL DEFENDANTS: **Failure To Remove Architectural Barriers**

51. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants. Defendants failed to remove barriers as required by 42 U.S.C. § 12182(a). Plaintiff is informed, believes, and thus alleges that architectural barriers which are structural in nature exist within the following physical elements of Defendants' facilities including but not limited to the disabled parking, exterior path of travel, common area and signage, as said facilities were not accessible because they failed to comply with the Federal ADA Accessibility Guidelines ("ADAAG") and California's Title 24 Building Code Requirements. In this case, the apartment failed to comply with Title 24 requirements. The physical access violations are described in detail within Exhibit B. The findings show that the following areas of access violations: parking, entrance, path of travel, accessible route, doors, drop box, restroom and the signs and Jacuzzi. The said violations are specified within Exhibit B. Defendant's facility does not have anything posted regarding service animals. Defendant's facility does not have any hearing-impaired smoke/fire alarms located at the facility. Defendant's facility does not have a TTY machine available on-site. Further, there is no Braille application available at the facility. All said violations failed to comply with Title 24 standards. Title III of the ADA requires

places of public accommodation to remove architectural barriers that are structural in nature to existing facilities. [See, 42 United States Code 12182(b)(2)(A)(iv).] Failure to remove such barriers and disparate treatment against a person who has a known association with a person with a disability are forms of discrimination. [See 42 United States Code 12182(b)(2)(A)(iv).] Thus, Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because he was denied equal access to Defendants' existing facilities.

CLAIM XII AGAINST ALL DEFENDANTS: **Failure To Modify Practices, Policies And Procedures**

52. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere in this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff and/or others similarly situated in entering and utilizing Defendants' services, as required by 42 U.S.C. § 12188(a). Defendants have known or should have known that Defendants had a duty to repair and maintain their property including accessible features since 1990. Defendants have failed to do so in the past up to and including the present. Plaintiff is also seeking an order requiring the Defendants to have a continuing duty of refurbishing the access features once each year. In the present matter, Defendants failed to have a plan to maintain any potential accessible features in a usable condition. Thus, Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff UNITED AFRICAN-ASIAN ABILITIES CLUB was denied equal access to Defendants' existing facilities. Based on the facts plead at ¶¶ 9 - 17 above of Plaintiff's First Cause Of Action above, and the facts elsewhere herein this

complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation. Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community. Plaintiff alleges there is a national public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants. Plaintiff desires to return to Defendants' places of business in the immediate future. Accordingly, the Plaintiff alleges that a structural or mandatory injunction is necessary to enjoin compliance with federal civil rights laws enacted for the benefit of individuals with disabilities.

CLAIM XIII - **Failure To Investigate And Maintain Accessible Features**

53. It is alleged that Defendants knowing failed to investigate ADA access compliance at the planning stage of opening the business or at the annual renewal of the business. At trial, Plaintiff shall prove Defendants entered a fee absolute or lease without considering ADA access at all, because they consciously decided they were exempted or they were in ADA physical access compliance because a local government approved the building plans for the property. It is alleged that Defendants reasoned that providing physical access means providing full and equal access, and this is the explanation for their failure to investigate providing reasonable modifications, alternative methods or auxiliary aids and their failure to investigate removing communication barriers. However, as alleged herein ADA covers more than physical access. It is alleged that Defendants opened their business in compliance with all laws. In the course of time, Defendants made repairs and administrative changes which violated ADA and its regulations. ADA Title III

Regulations state, "Sec.36.211 Maintenance of accessible features. (a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. (b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." For the purposes of this part of this claim Plaintiff alleges Defendants mental state satisfied the second prong of intent - knowledge to a substantial certainty. Also, it is alleged Defendants exercised administrative control over third parties including architects, engineers, construction contractors, lawyers, management and employees as to the accessible features of the public accommodation. Accessible features include compliance with new construction and alteration access standards, readily achievable architectural and communication standards, and providing alternative methods, reasonable modifications. The basis of this claim is that Defendants did and does not have a process to maintain prior and future accessible features. Further, it is alleged that even if Defendants currently install accessible features they will not maintain them in the future. Thus, it is alleged that Defendants intentionally failed to maintain accessible features they installed when the property was first constructed or when the public accommodation was first open or when the property was remodeled.

54. WHEREFORE, Plaintiff prays for judgment and relief as hereinafter set forth.

CLAIM III: **Violation Of The Unruh Act**

55. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere herein this complaint and because Defendants violated the CA Civil Code § 51 by specifically failing to comply with Civil Code §51(f). Defendants' facility violated state disability laws, the ANSI Standards, A117, and California's Title 24 Accessible

Building Code by failing to provide equal access to Defendants' facilities. Defendants did and continue to discriminate against Plaintiff in violation of Civil Code §§ 51(f), and 52.

56. Based on the facts plead at ¶¶ 9 - 17 above, Claims I, II, and III of Plaintiffs' First Cause Of Action above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation. Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community. Plaintiff alleges there is a state public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants. Plaintiff desires to return to Defendants' places of business in the immediate future. Accordingly, the Plaintiff alleges that a structural or mandatory injunction is necessary to enjoin compliance with state civil rights laws enacted for the benefit of individuals with disabilities.

57. Wherefore, Plaintiff prays for damages and relief as hereinafter stated.

**Treble Damages Pursuant To Claims I, II, III Under The California Accessibility Laws**

58. Defendants, each of them respectively, at times prior to and including the day Plaintiff member patronized Defendants' facilities, and continuing to the present time, knew that persons with physical disabilities were denied their rights of equal access to all portions of this public accommodation facility. Despite such knowledge, Defendants, and each of them, failed and refused to take steps to comply with the applicable access statutes; and despite knowledge of the resulting problems and denial of civil rights thereby suffered by Plaintiff. Defendants, and each of

them, have failed and refused to take action to grant full and equal access to Plaintiff in the respects complained of hereinabove. Defendants, and each of them, have carried out a course of conduct of refusing to respond to, or correct complaints about, denial of disabled access and have refused to comply with their legal obligations to make Defendants' public accommodation facilities accessible pursuant to the ADAAG and Title 24 of the California Code of Regulations (also known as the California Building Code). Such actions and continuing course of conduct by Defendants in conscious disregard of the rights and/or safety of Plaintiff justify an award of treble damages pursuant to sections 52(a) and 54.3(a) of the California Civil Code. The California Supreme Court has stated: "…the statute provides for damages aside from any actual damages incurred by the plaintiff. 'This sum is unquestionably a penalty which the law imposes, and which it directs shall be paid to the complaining party. ... [But], while the law has seen fit to declare that it shall be paid to the complaining party, it might as well have directed that it be paid into the common-school fund. The imposition is in its nature penal, having regard only to the fact that the law has been violated and its majesty outraged'." *Koire v Metro Car Wash (1985) 40 Cal.3d 24, 33-34* [citing its decision in *Orloff v. Los Angeles Turf Club (1947) 30 Cal.2d 110, 115*].

59. Defendants, and each of their actions have also been oppressive to persons with physical disabilities including Plaintiff and have evidenced actual or implied malicious intent toward Plaintiff who has been denied the proper access to which he is entitled by law. Further, Defendants and each of their refusals or omissions to correct these problems evidence disregard for the rights of Plaintiff.

60. Plaintiff prays for an award of treble damages against Defendants, and each of them, pursuant to California Civil Code sections 52(a) and 54.3(a).

61. Wherefore, Plaintiff prays for damages and relief as hereinafter stated.

**DISCRIMINATORY PRACTICES IN HOUSING ACCOMMODATIONS**

THIRD CAUSE OF ACTION: Violation of the US Fair Housing Act

Based on the facts plead at ¶¶ 9 - 17 above and elsewhere herein this complaint, Plaintiff Club suffered discrimination in violation of FHA sections 42 § 3604(c), and § 3604(f)(1- 3) as further detailed below.

CLAIM I: Discrimination In Violation of 42 § 3604(f)(2)

62. Based on the facts plead at ¶¶ 9 - 17 above and elsewhere herein this complaint, Plaintiff Club suffered discrimination in violation of this FHA section. The relevant FHA statute states it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person… § 3604(f)(2) [emphasis added]. As previously stated, Plaintiff Club alleges Club's Memberwas a prospective renter. ¶¶9 – 17 above. However, Plaintiff Club is not required to have an interest in renting a particular property or dwelling to have standing. *Smith v. Pacific Properties and Development Corp* at 1099 [ *Smith* court held a disabled person does not have to have an interest in actually purchasing or renting a particular property or dwelling in order to allege a discriminatory violation to enforce the rights created by § 3604(f)(2)]. In the instant case, Defendant's rental office located on the property is a "facility" in connection with the rental of a dwelling and the on-site rental services provided within the rental office fall within the FHA statute. Plaintiff Club asserts that Defendant's failure to remove architectural barriers to gain access to Defendant's on-site rental office is a separate, independent, actionable violation of this FHA section § 3604(f)(2). Plaintiff Club has alleged that Defendant failed to provide compliant disabled parking, failed to provide an accessible exterior path of travel to the rental office entrance, failed to provide an accessible rental office since the office entrance door threshold in too high to surmount in a wheelchair, the office

entrance doorway too narrow to pass through, and the office entrance door operating hardware not accessible to open. SAC ¶¶11. The 9th Circuit *Smith* court has stated that the mere observation of overt architectural barriers is actionable. *Smith* at 1104 [“To read an additional standing requirement into the statute beyond mere observation, however, ignores that many overtly discriminatory conditions, for example, lack of a ramped entryway, prohibit a disabled individual from forming the requisite intent or actual interest in renting or buying *for the very reason* that architectural barriers prevent them from viewing the whole property in the first instance” (emphasis in original)]. The *Smith* case did not involve ADA Title III claims, yet the Ninth Circuit court found the Defendants liable under this FHA subsection. However, Plaintiff Club did not just allege that Club’s Memberobserved Defendant’s overt architectural barriers, but Club alleged that Club’s Memberpersonally experienced the barriers, and this caused her denial of equal access to Defendant’s rental office facility and its rental services located therein. Defendant also discriminated against Club by failing to modify its practices and policies to provide access via other methods of access to its rental services provided within the rental office. Defendant’s failure to remove the architectural barriers to access or to provide other methods of access to the rental office facility, and Defendant’s provision of rental services constitutes the prohibited discrimination, separately and independently.

63. Additionally, while not necessary to find primary liability directly within this FHA section as stated in paragraph 50 above, without reference to any other statute, Defendant’s conduct is also prohibited under ADA Title III and constitutes a second, separate source of discrimination against Plaintiff Club in violation of FHA § 3604(f)(2). Plaintiff Club asserts that any discriminatory conduct in violation of ADA Title III, especially since it specifically involves the express reference to the rental office facilities and services, also constitutes prohibited “discrimination”

under FHA § 3604(f)(2).

64. Plaintiff Club suffered the injury of discriminatory conduct by Defendant and Club suffered damages as a result. Plaintiff Club seeks injunctive relief as well as damages, both of which are available under 42 USC § 3613(c). Even if its later determined that prospective injunctive relief is not available to Club, Plaintiff Club is still permitted to recover damages. *Harris v Itzakhi*, 183 F.3d 1043, 1050 (9th Cir 1999) [During the appeal in *Harris* case, the plaintiff therein moved Three Thousand (3000) miles away and her injunctive claims became moot. However, Plaintiff's claim for the retrospective relief of damages were unaffected]. Plaintiff Club damage claims survive even if prospective relief is not available.

CLAIM II: Discrimination In Violation of 42 § 3604(c) As To NSA

65. Based on information, belief, and the facts plead at ¶¶ 9 – 17 above and elsewhere herein, Plaintiff Club herein alleges that Defendants caused Club to suffer the injury of discrimination since Defendants violated 42 U.S.C. §§ 3604 (c) with respect to its notices, statements, and advertisements ("NSA"). Plaintiff Club alleges that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities.

66. In the present case, Defendant advertises the subject property on webs sites including, but not limited to, the following websites: apartments.com and forrent.com.

67. Plaintiff Club alleges that the internet NSA is a primary method that potential renters learn information about the amenities offered at apartments and their policies practices and procedures. Plaintiff Club alleges that Defendants existing advertisements on websites is directed toward persons who do not have disabilities.

It is alleged that Defendants: made, printed, or published, or cause to be made, printed, or published any notice, statement, or advertisement,[1] with respect to the rental of a dwelling that discrimination based on handicap; discriminated in the rental, or to otherwise make unavailable or deny, a dwelling to any renter because of a handicap of—(A) that renter, (B) a person residing in or intending to reside in that dwelling after it is so rented, or made available; or (C) any person associated with that renter; discriminated against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—(A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so rented, or made available; or (C) any person associated with that person; discriminated by—(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted; (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. The FHA was passed in 1968 then amended in 1988 before the Internet was widely used. In the present day, landlords publish notices on the Internet. Plaintiff Club caused certain such notices to be downloaded and reviewed them. In the present case, none of Defendants' Internet advertising adhered to the guidelines within 24 CFR 109 or had the following:

[1] 24 CFR 100.75 - Discriminatory advertisements, statements and notices.

Equal Housing Opportunity Statement: We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation. We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing because of race, color, religion, sex, handicap, familial status, or national origin.

Equal Housing Opportunity Slogan: "Equal Housing Opportunity."

Table III

Illustration of Media Notice--Publisher's notice: All real estate advertised herein is subject to the Federal Fair Housing Act, which makes it illegal to advertise "any preference, limitation, or discrimination because of race, color, religion, sex, handicap, familial status, or national origin, or intention to make any such preference, limitation, or discrimination."

We will not knowingly accept any advertising for real estate which is in violation of the law.

All persons are hereby informed that all dwellings advertised are available on an equal opportunity basis.

68. In the present case, Defendants had the opportunity, based upon either the large number of models used in an advertisement or the numerous advertisements placed by an advertiser with a particular publisher, to include models of persons with handicaps, a protected group under the FHA. Plaintiff Club alleges Defendant engages in disparate treatment with respect to Defendants' internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities. Plaintiff can establish liability based on the "ordinary reader" standard. Defendants' Internet advertising uses selective media or content exclusively to cater to the majority population without disabilities. Further,

the said advertising uses catch words, symbols or logotypes and colloquialisms that suggest a preference for people without disabilities. Moreover, the selective placement of the equal housing opportunity logo suggests a preference for people without disabilities. Further, none of the human models used in the said advertising have a known disability. In addition, the said advertising fails to conform to the advertising requirements delineated in Appendix I, Tables I-III of 24 CFR 109. Defendants had the opportunity, based upon either the large number of models used in an advertisement or the numerous advertisements placed by an advertiser with a particular publisher, to include models of a protected group.

69. Plaintiff Club alleges that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities. Plaintiff Club alleges that the internet NSA is a primary method that potential renters learn information about the amenities offered at apartments and their policies practices and procedures. Plaintiff Club alleges that Defendants existing advertisements on websites is directed toward persons who do not have disabilities.

70. Plaintiff Club alleges that Defendants notices, statements, and internet advertisements suggests to an ordinary reader that Defendants have a preference to attract tenants without handicap or disabilities and the persons associated with them. Plaintiff Club alleges Defendant engages in discriminatory treatment as against Plaintiff Club with respect to Defendants internet Notices, Statements, and Advertisements, as to the amenities being offered to people without disabilities and people with disabilities. Defendants notices, statements, and advertisements ("NSA") deterred Plaintiff Club and other members of the disability public from going to or renting Defendants apartments. Defendant's NSA fail to provide any information as to any alternative methods of access to the inaccessible features.

Plaintiff Club alleges that the present Defendant landlord uses its NSA to inform potential tenants about the apartments so they do not need to physically visit the place to make housing choices. However, prospective tenants with disabilities are forced to call or physically visit a place to assess the physical access amenities, policies, procedures that affect their disabilities. Due to Defendant's discriminatory notices, statements, and advertisements, Plaintiff Club suffered disparate discriminatory treatment due to Defendant's failure to comply with the FHA in that Plaintiff Club needed to physically visit the property to ascertain its physical accessibility, and its leasing policies and procedures that affect Plaintiff Club as a person with disabilities. As a result, Plaintiff Club also suffered the denial of equal access prohibited under Plaintiff's ADA claims as stated above. Additionally, Plaintiff Club alleges Defendant engages in disparate treatment with respect to Defendants internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities and Plaintiff Club suffered discriminatory treatment, including but not limited to the following examples. Under the FHA and ADA, a companion service dog is not a pet. The FHA and ADA prohibit any extra charges for companion or service dogs. Defendant landlord expects prospective tenants to obtain information about its apartments from its internet NSAs, yet its companion and service animal policy is not available on the internet. Plaintiff Club potentially will also need to personally undertake the expense to modify any rental unit to accommodate her disabilities including, but not limited to, such issues as providing accessible parking in close proximity to a potential rental unit, grab bars in the restroom, installation of accessible sink and shower faucets, potentially replacing door operating hardware with accessible hardware, potential ramp at the rental unit entrance door, etc. Additionally, Defendant's apartment common areas may need to be reasonably

modified by Plaintiff Club, ie such as any common area grill spaces, etc. Defendant's NSA do not provide any information as to their reasonable modification or accommodation policies, if any.

71. Also, Defendant's internet website NSA are not accessible visually since one is not able to click and increase the NSA font size to make it more readable for persons with impaired vision. Additionally, Defendant's internet NSAs fail to be offered in alternative methods. The offices and common areas offer services. Even if the facilities were constructed before March 13, 1991 and the physical barriers are not readily achievable to remove, the services offered in the facilities must be accessible.

72. Plaintiff Club alleges Defendant's internet and other Notices, Statements, and Advertisements do not state the accessible amenities at all and an ordinary person would conclude it is only directed towards persons without disabilities. Plaintiff alleges that Defendant's use of the "equal housing opportunity statement" is also misleading. Defendant's apartment property is not accessible. Prospective tenants with disabilities including Plaintiff Club are forced to physically visit a place to assess the access amenities while persons without disabilities do not. All the above facts stated herein have and did have a discriminatory impact on Plaintiff Club and on the disability community in violation of 42 U.S.C. § 3604(c), § 3604(f)(1-2). Plaintiff Club personally experienced the discriminatory conduct as stated above in violation of the FHA.

73. Wherefore, Plaintiff was injured, and prays for damages and other relief as hereinafter stated.

CLAIM III: Discrimination In Violation of 42 § 3604(f)(1)

74. Based on the facts plead at ¶¶ 9 – 17, ¶¶50 -60 above and elsewhere herein this complaint, Plaintiff Club suffered discrimination in violation of this FHA

section. Defendant caused Plaintiff Club to suffer disparate impact discrimination. The relevant FHA statute states it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or… §3604(f)(1) [emphasis added]. The very recent U.S. Supreme Court decision upheld the unanimous rule, of all nine Circuit Courts of Appeal that had previously addressed it, that the FHA statutory scheme permits disparate impact claims, and that those type of claims also do not require a showing of intent. *Texas Dept. of Housing and Community Affairs v Inclusive Communities Project*, 135 S.Ct. 2507, 2519 (2015) [ the statutory phrase "to otherwise make unavailable or deny" – the very same statutory language as also used in §3604(f)(1)]. Our Ninth Circuit Court of Appeals previously had reached that same conclusion. *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1311 (9th Cir 1982). Based on the facts plead at ¶¶ 9 – 17, ¶¶50 -60 above and elsewhere herein this complaint, Plaintiff Club suffered discrimination in violation of FHA §3604(f)(1). Wherefore, Plaintiff was injured, and prays for damages and other relief as hereinafter stated.

CLAIM IV: **Violation of California Fair Housing Act**

75. Based on information, belief and the facts stated above, Plaintiffs allege that Defendants violated the California Fair Employment and Housing Act. Based on information, belief and the facts stated above, Plaintiffs allege that Defendants failed to design and construct a covered multifamily dwelling in a manner that allows access to and use by disabled persons by providing, at a minimum, the following features in violation of California Government Code, Title 2, §12955.1: (1) All covered multifamily dwellings shall have at least one building entrance on an

accessible route, unless it is impracticable to do so because of the terrain or unusual characteristics of the site. The burden of establishing impracticability because of terrain or unusual site characteristics is on the person or persons who designed or constructed the housing facility. (2) All covered multifamily dwellings with a building entrance on an accessible route shall be designed and constructed in a manner that complies with all of the following: (A) The public and common areas are readily accessible to and usable by persons with disabilities. (B) All the doors designed to allow passage into and within all premises are sufficiently wide to allow passage by persons that use mobility devices. (C) All premises within covered multifamily dwelling units contain the following features of adaptable design: (i) An accessible route into and through the covered dwelling unit. (ii) Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations. (iii) Reinforcements in bathroom walls to allow later installation of grab bars around the toilet, tub, shower stall, and shower seat, where those facilities are provided. (iv) Usable kitchens and bathrooms so that an individual in a wheelchair can maneuver about the space. Defendants failed to design and construct 10 percent of the multistory dwelling units in buildings without an elevator that consist of at least four condominium dwelling units or at least three rental apartment dwelling units in a manner that incorporates an accessible route to the primary entry level entrance and that meets the requirements of paragraph (2) of subdivision (a) with respect to the ground floor, at least one bathroom on the primary entry level and the public and common areas. Any fraction thereof shall be rounded up to the next whole number.

76. Based on information, belief and the facts stated above, Plaintiffs allege that Defendants refused to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled

person equal opportunity to use and enjoy a dwelling in violation of CA Government Code 12925.

77. Wherefore, Plaintiffs prays for damages and relief as hereinafter stated.

**DEMAND FOR JUDGMENT FOR RELIEF:**

A. The Plaintiff Association is seeking organizational damages;

B. The Plaintiff Association seeks compensatory damages pursuant to 42 U.S.C. 3613(c);

C. Plaintiffs are seeking compensatory and punitive damages pursuant to federal and state fair housing laws;

D. Plaintiffs are seeking general damages pursuant to Cal. Civil Code §§ 3281, and 3333;

E. Plaintiffs are seeking damages pursuant to California Civil Code 51,52 & 54.3

F. All Plaintiffs seek injunctive relief pursuant to 42 U.S.C. 3613(c). Plaintiffs request this Court enjoin Defendants to remove all architectural and communication barriers in, at, or on their facilities including without limitation violations of 42 U.S.C 3601.1

G. For attorneys fees pursuant to 42 U.S.C. 3613(c)(2), 42 U.S.C. § 1988;

H. A Jury Trial and;

I. For such other further relief as the court deems proper.

Respectfully submitted:

LAW OFFICES OF DAVID C. WAKEFIELD

Dated: April 6, 2017

By:

/s/David C. Wakefield
DAVID C. WAKEFIELD, ESQ.
Attorney for Plaintiffs